**James HEATH, et al., Plaintiffs,**

v.

**Joseph M. DeCOURCY, et al., Defendants.**

**Civ. No. C-1-76-0569.**

United States District Court, S.D. Ohio, W.D.

Nov. 15, 1988.

Stephen H. Olden, Legal Aid Society, Cincinnati, Ohio (Edward S. Stokan, John E. Schrider, Jr., of counsel), for plaintiffs.

Robert B. Taylor, Asst. Pros. Atty., Pierce E. Cunningham, Cincinnati, Ohio, for defendants.

## ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court upon defendant Simon L. Leis, Jr.'s Motion to Modify Agreed Modification of Agreed Final Judgment filed June 6, 1988 (Doc. 302). Defendant moves the Court for an order modifying the Agreed Modification of Agreed Final Judgment entered in this action on May 24, 1988 (Doc. 301). Plaintiffs oppose the requested modification.

Defendant's motion to modify relates specifically and exclusively to the classifi-

cation of inmates permitted to be double-celled in the Hamilton County Justice Complex (Justice Complex). This Court's consideration of that narrow issue does not include a revisit to the exhaustive and tortuous evolution of this twelve-year old case, nor does it include a philosophical review of model criminal justice systems. This Court's jurisdiction and involvement in this dispute are solely and strictly based upon its responsibility to enforce the judgment entered in this case.

Accordingly, the Court discards all unnecessary and improper discussion of matters irrelevant to the enforcement of the agreed judgment and focuses on the evidence significant to the classification scheme which is set forth in paragraph A(1)(a), at page 3 of the Agreed Modification of Agreed Final Judgment.

Pursuant, therefore, to two days of hearings, and upon consideration of the testimony, exhibits, briefs and arguments of counsel, the Court makes the following findings of fact and conclusions of law on the specific modification requested by defendant Leis.

## FINDINGS OF FACT

1. The parties in this class action suit entered into a Consent Decree which became a final judgment in this case on September 25, 1985 (Doc. 169). This Consent Decree provided that Hamilton County would confine no more than one inmate per cell in either the Hamilton County Jail or the Justice Complex, set staffing limits, provided for inmate and staff safety and well-being, and set forth procedures for modification, enforcement and monitoring.

2. An Agreed Modification of Agreed Final Judgment (Agreed Modification) was negotiated by the parties and became a final judgment in this case on May 24, 1988 (Doc. 301). This modified Consent Decree permitted double-celling of inmates in the Justice Complex in 168 cells, set an inmate population limit in the Jail Annex of 162 and in the Justice Complex of 1016, provided for inmate safety and well-being, gave defendants the authority to comply with the maximum population limits by releasing inmates based upon set criteria and by refusing admission of inmates, and authority to set staffing limits.

3. The Agreed Modification set forth classification requirements for those inmates to be double-celled in part as follows:

1) *Classification.* Inmates housed in said three (3) wings permitting double-celling shall be only those then classified as minimum security and who are male misdemeanants, sentenced on a non-violent current charge, with no conviction in the previous five (5) years for assaultive behavior, and with no special needs. 'Non-violent current charge' shall mean those offenses listed in Attachment A, and 'no special needs' shall mean the inmate does not fit the criteria listed in Paragraph D(3) of the Agreed Final Judgment and is not mentally disturbed, seriously handicapped (physically), a carrier of a communicable disease, or a seriously impaired alcoholic or drug addict. Inmates shall not be transferred into the minimum security units without prior classification authorization and immediate documentation.

4. All parties agree that this classification requirements paragraph of the Agreed Modification is in error.

5. The Justice Complex opened in 1985 and is a modern county jail facility with 848 cells. It is undisputed that the maximum number of inmates to be held in the Justice Complex is 1016; that capacity limit is not at issue, and no plaintiff or defendant has requested that the maximum population number be increased.

6. Defendant Sheriff Leis has the legal duty to safely, reasonably, and humanely keep and maintain prisoners, and has a high responsibility to keep the peace as chief law enforcement officer in the county.

7. The interests of the government, the public, and the inmates are not adverse to each other; the paramount goal is to ensure that reasonable and just sentences are safely, reasonably and humanely served.

8. The testimony of Mr. W. Raymond Nelson, his curriculum vitae, his knowl-

edge, skill, experience, training, and education qualify him as an expert witness under Article VII of the Federal Rules of Evidence.

9. The primary means to prevent the problems associated with double-celling is an effective classification system.

10. A major purpose of classifying inmates in a jail is to be able to house certain categories of inmates from other categories to ensure inmate safety. Classification is used to reduce the possibility of problems among inmates, as there cannot be constant 24-hour observation of each inmate.

11. Other important purposes of a classification system in corrections are to determine an inmate's need for programming and to make an assessment of risk for that individual. In a jail setting, the assessment of risk is one of the most critical aspects of the classification system.

12. By its very nature, a classification system is not precise. Since the identification of inmates and predictions of risk are based on general, objective indicators, a reasonable decision as to where an inmate should be held may not be 100 percent accurate. It should err, however, on the side of safety if it were to err.

13. The purpose of the Consent Decree and the modifications thereto is to place inmates at a minimal risk of injury or harm while allowing defendants to utilize available cells within the established capacity limit of the Justice Complex. The purpose never was and is not now to increase the number of inmates actually incarcerated over the capacity limit of 1016. Accordingly, the number of cells does not play a part in determining *eligibility* of the inmates for double-celling.

14. Predicting potential for violence is very difficult and the best indicator is the inmate's history of past behavior. This information is necessary to determine with some assurance whether an inmate presents a risk or whether he or she can be said to only require minimum security; an examination of a five-year history is a reasonable length of time to employ to arrive at a useful and accurate risk assessment.

15. Changing the classification criteria regarding assaultive behavior in an inmate's history from no convictions in five years to no more than one in three years increases the risk of harm to the inmates who are double-celled.

16. Excluding assault charges and aggravated menacing charges from the list of violent charges for the purpose of classification increases the risk of harm to those who are double-celled.

17. Changing the classification criteria regarding inmates charged with assaultive type offenses increases the risk of harm to double-celled inmates.

18. Whether an inmate is held pretrial or pursuant to a sentence is not an accurate classification distinction for evaluating risk in a classification procedure; classification should be based on propensity for violence and may disregard whether an inmate is being held pretrial or has been sentenced.

19. Double-celling felons and misdemeanants does not increase the risk of harm to inmates if the proper assessments of their potential for violence are made.

20. The "split-sentence" in the State of Ohio and in the Hamilton County Common Pleas Court, while it is imposed for a conviction of a felony, is designed to permit the split-sentenced inmate to serve "local time" of up to six months in the county facility with the remainder of the sentence to be served on probation for an extended period of time without serving time in a state penal facility on the felony charge so long as the probation terms are met. Double-celling certain types of split-sentenced inmates who meet the criteria for double-celling does not, alone, increase the risk of harm to inmates; here, the inmate's propensity for violence should be the determining factor rather than the fact that he or she was convicted of a felony.

21. The Agreed Modification, which was negotiated by the parties and which became a final judgment on May 24, 1988, modified the Consent Decree to permit double-celling of inmates in the Justice Com-

plex in 168 cells in three specific wings; therefore, that modification increased the designed capacity from 848 to 1016 inmates. Pursuant to those terms, the original maximum designed capacity of 848 *could* be exceeded only when eligible inmates who did not pose a predictable risk to safety were assigned to specified double cells.

22. The fact that there are 168 cells *available* for double-celling does not justify increasing the risk of harm to those double-celled inmates by modifying the criteria for eligibility simply so that the number of inmates eligible to be double-celled would be increased.

23. Expanding the classification limits set forth in the Agreed Modification to permit double-celling of qualified split-sentenced inmates, of certain felons and misdemeanants, and of certain pretrial and sentenced inmates would not present an increase in risk of harm to the inmates and is consistent with the intent and purpose of the settlement agreement in this case.

24. Expanding the classification requirements to include the double-celling of female inmates was not previously considered by the parties, addressed in their prior agreement, or included in the Court order. The terms of the Agreed Modification of Agreed Final Judgment provide that double-celling shall be permitted in three minimum security wings of the Justice Complex which house males. As the original Agreed Final Judgment mandates the separate housing for female and male inmates, females could not and would not be housed in the three wings designated for double-celling to which the modified classification paragraph applies.

25. The double-celling of inmates in local jails is proscribed by the Minimum Standards for Jails in Ohio promulgated by the Ohio Department of Rehabilitation and Correction.

26. Double-celling should be implemented only when absolutely necessary and required by the penological program.

27. Inmates should be double-celled only for the minimum time required to fulfill the penological purpose of a particular program.

28. The state judges have available to them the most extensive and accurate information. They possess the necessary discretion and power to impose appropriate sentences or sentencing alternatives. By its very nature, a local criminal facility changes daily in terms of number and types of inmates and problems thereby created.

### CONCLUSIONS OF LAW

1. There are three grounds upon which a consent decree may later be modified:

(1) a decree may be modified in accordance with basic contract principles,

(2) Rule 60(b) provides relief from a consent decree upon a showing that the decree is void or is no longer equitable,

(3) a Court of equity has continuing jurisdiction to modify a decree upon changed circumstances.

*Stotts v. Memphis Fire Dept.,* 679 F.2d 541, 560–61 (6th Cir.1982), *rev'd on other grounds,* 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984).

■ 2. A consent decree may also be modified where a better appreciation of the facts in the light of experience indicates that the decree is not properly adopted to accomplishing its purposes. *Stotts,* 679 F.2d at 562.

■ 3. Defendant bears the burden of showing his entitlement to the relief sought. *See Ruiz v. Lynaugh,* 811 F.2d 856 (5th Cir.1987).

4. This must be done based on an evidentiary record so that appropriate facts may be found by the trial court. *Stotts,* 679 F.2d at 561.

5. In deciding an application to modify a consent decree, the trial court must balance the competing interests of the parties and the public. *See Duran v. Elrod,* 760 F.2d 756, 759 (7th Cir.1985); *see also Plyler v. Evatt,* 846 F.2d 208, 211 (4th Cir.1988).

■ 6. Inmates in the Hamilton County Justice Complex do not have the constitu-

tional right to be single-celled. *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

▄ 7. The double-celling of eligible inmates being held pretrial on misdemeanor charges in the Justice Complex does not present an increase of risk to the inmates.

8. The double-celling of eligible inmates being held pretrial on felony charges in the Justice Complex does not present an increase of risk to the inmates.

9. The double-celling of eligible inmates split-sentenced on felony charges in the Justice Complex does not present an increase of risk to the inmates.

10. This federal court's sole responsibility is to enforce the judgment entered in this action. The law clearly and logically imposes the obligation to operate the jail upon the local elected officials who are in the best position to manage their correctional facility. Ohio Revised Code §§ 341.-01 *et seq.* and § 307.01; see *Bell,* 441 U.S. at 547–548, 99 S.Ct. at 1878–1879.

11. A federal court should not second guess or interfere with those local officials who competently fulfill their duties. Absent allegations of violations of rights protected by the United States Constitution or Section 1983 of Title 42 of the United States Code, a federal court plays no role in the administration of local criminal justice.

12. It is necessary for this Court to make a limited modification of the paragraph contained in the agreed judgment regarding the classification criteria for double-celling in order to enforce the judgment entered in this case.

13. This modification is mandated by common sense as it does not increase the risk to inmates, and permits more effective utilization of the government's resources in the safe, orderly and humane administration of the jail, thereby promoting the public interest of having reasonable and lawful sentences served.

14. When classifying inmates for double-celling eligibility, defendants are required to consider the length of incarcera-

tion. Inmates serving the shortest period of incarceration shall be double-celled before those serving longer periods of incarceration. Double-celling must be used only as an emergency measure for the shortest possible time required to effect penological purposes.

15. The Court's Order dated September 25, 1985 (doc. 169), as modified by the May 24, 1988 Order (doc. 301), and as modified herein is the final judgment of this Court.

## ORDER

Based upon the foregoing, after weighing the equities involved and after balancing the interests of and impact on all parties and the public, the Court ORDERS the classification paragraph A(1)(a) of the Agreed Modification of Agreed Final Judgment be modified to read as follows:

*Classification.* Inmates housed in said three (3) wings permitting double-celling shall be only those inmates then classified as minimum security. 'Minimum security' shall be defined for the purpose of this paragraph as incarcerated males not confined on a current charge or sentence set forth in Attachment A, with no convictions within the past five years for assaultive behavior, and with no special needs. 'No special needs' shall mean the inmate does not fit the criteria listed in paragraph D(3) of the Agreed Final Judgment and is not mentally disturbed, seriously handicapped (physically), a carrier of a communicable disease, or a seriously impaired alcoholic or drug addict. Inmates shall not be transferred into minimum security units without prior classification authorization and immediate documentation.

Upon consideration of all of the facts material to the requested modification and upon application of the controlling principles of law, this Court concludes that such modification fairly and adequately protects the rights and interests of all parties and the public, and is not unduly burdensome. Therefore, defendant Leis' Motion to Modify (Doc. 302) is DENIED in part and GRANTED in part: the classification requirements paragraph shall be modified as

stated above, defendant's motion to modify Attachment A to exclude the charges of Assault and Aggravated Menacing is DENIED, and defendant's oral motion to include the double-celling of female inmates is DENIED as no female is housed in any of the three wings used for double-celling.

This Court retains jurisdiction over the subject matter and parties in this case for the purpose of protecting them according to the terms of this judgment; this is, however, a final judgment and this Court expressly determines that there is no just reason to delay entry of final judgment.

Accordingly, the Agreed Modification of Agreed Final Judgment is hereby ORDERED to be modified consistent with the terms of this Order and shall operate as the final judgment in this matter. The Clerk is ordered to enter final judgment forthwith pursuant to Fed.R.Civ.P. 54(b).

IT IS SO ORDERED.