992 F.2d 630
 25 Fed.R.Serv.3d 953
 James HEATH, First Named Class Representative; Harold
Lancy; Harold Keith; Johnny Edwards; Kenneth Thompson;
Edward Akerson; Michael R. Blum; Herbert Hayes; David F.
Burke; Gary W.J. Bevins; Bailey Jerome Hayes; Gene H.
Gregg; plaintiff class members, Plaintiffs-Appellants,
v.
Joseph M. DeCOURCY, Norman A. Murdock, Robert E. Taft, II,
as Commissioners of Hamilton County, and Simon L.
Leis, Jr., as Sheriff of Hamilton
County, Defendants-Appellees.
 Nos. 91-3778, 92-3317.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 7, 1992.
Decided April 30, 1993.
 
 Stephen H. Olden (argued and briefed), Jennifer J. Branch (briefed), Legal Aid Soc. of Cincinnati, Cincinnati, OH, for plaintiffs-appellants.
 Pierce Edward Cunningham, Frost & Jacobs, Robert E. Taylor, Asst. Pros. Atty. (argued and briefed), Cincinnati, OH, for defendants-appellees.
 Michael J. O'Hara, O'Hara, Ruberg & Taylor, Covington, KY, James K. Rogers (briefed), American Civil Liberties Union of Ohio, Cincinnati, OH, amicus curiae American Civil Liberties Union of Ohio.
 Before: MARTIN and SILER, Circuit Judges; and CLELAND, District Judge.*
 SILER, Circuit Judge.
 Plaintiffs, a class of present and future inmates, appeal the district court's orders of: (1) a partial termination of supervision and jurisdiction over consent decrees pertaining to the operation of the Hamilton County Jail Annex and the Hamilton County Justice Center; and (2) a modification of the consent decrees so as to permit unrestricted double-celling of inmates and an increase in the Annex and Justice Center inmate population. For the following reasons, we REVERSE and REMAND.
 
 
 1
 In 1976, plaintiffs brought a 42 U.S.C. § 1983 action against the Hamilton County Board of County Commissioners and Hamilton County Sheriff challenging their confinement conditions at the Annex and Justice Center. Plaintiffs alleged violations of their rights under the Eighth and Fourteenth Amendments of the United States Constitution consisting of unconstitutional conditions and policies, including overcrowding and other institutionalized forms of degradation. Following protracted discovery and negotiations, the parties entered into a settlement of all claims, the terms of which were incorporated into an Agreed Final Judgment ("AFJ"). Finding the mandates of the AFJ similar to affirmative action, the district court added a "sunset provision" sua sponte, which provided, in part, as follows:
 
 
 2
 [T]he Agreed Final Judgment herein shall be in full force and effect from the date of this order until such time as the final report of the monitor shall have been completed and submitted to the Court, ... In the event that the monitor finds that Defendants are not in full compliance with each provision of the [AFJ], ..., the [AFJ] shall continue in full force and effect until such time as the monitor certifies to this Court that there is compliance ... for a period not less than 180 days.... In no event shall the [AFJ] herein be valid for a period of less than three years and six months, and in no event shall the [AFJ] be valid for a period of more than five years and six months unless the monitor is unable to certify to the Court full compliance with the [AFJ] has occurred for ... 180 days....[1]
 
 
 3
 The parties agreed to have the sunset provision apply to the AFJ, except for Paragraphs A (population), B (staffing) and D (classification), which were made subject to a twenty-year sunset provision. In addition, attached to the AFJ was a "Monitoring and Compliance Document," providing for the district court's appointment of a compliance monitor to conduct investigations in January, 1986, and July, 1986, 1987, and 1988, and as further directed. The district court entered the AFJ as a final judgment in September, 1985, but plaintiffs appealed the judgment because of the sua sponte modification. This court remanded for clarification by the district court.
 
 
 4
 Within five weeks of the AFJ's entry in 1985, the inmate population began to exceed the design capacity of the new facilities. In response, plaintiffs filed a contempt motion against defendants based on the overcrowding and the ongoing use of approximately 300 cots to accommodate the increasing number of inmates. After 18 months of studies and negotiations, defendants submitted to the district court a jail overcrowding reduction plan, along with a motion to modify the AFJ. The parties resolved the motions by entering into the Agreed Modification of Agreed Final Judgment ("AMAFJ"), a supplement to the AFJ, which set inmate population caps, prohibited the use of cots, and provided for limited double-celling of a specifically defined class of low-risk inmates. It also allowed the sheriff to refuse admission of inmates to ensure compliance with the population caps. The AMAFJ did not modify the sunset provisions.
 
 
 5
 As a result of defendants' failure to comply with the AMAFJ, in September, 1987, plaintiffs filed a motion to enforce the AMAFJ. Meanwhile, the sheriff was ordered to limit the prison population and to release misdemeanant inmates in order to comply with the population cap. In November, 1987, plaintiffs' motion to enforce was granted. Defendants, along with the Hamilton County Municipal Court judges, appealed to this court claiming that the settlement agreement could not be enforced.[2] The appeals were dismissed as premature. The parties then agreed on modifications to the consent decrees. On May 20, 1988, the modified AMAFJ became effective as a final order.
 
 
 6
 On June 6, 1988, the sheriff filed a motion to modify the AMAFJ pursuant to Fed.R.Civ.P. 60(b). Following a hearing, the district court granted the motion insofar as it modified the class of inmates subject to double-celling, but denied the motion insofar as it sought to include female inmates in that class. 704 F.Supp. 799. Plaintiffs appealed the decision, and this court affirmed. See Heath v. DeCourcy, 888 F.2d 1105 (6th Cir.1989).
 
 
 7
 In September, 1990, following the court-appointed monitor's fifth inspection and report on the facilities, plaintiffs filed a contempt motion against defendants for their failure to comply with the consent decrees. On November 19, 1990, the district court held that defendants had complied in five of the seven areas raised in the motion, and deferred judgment on the other two areas, acoustics and education programs, as to allow defendants to take appropriate action by January 1, 1991.
 
 
 8
 On April 5, 1991, the district court ordered, sua sponte, an April 12, 1991, hearing to determine: (1) whether defendants substantially complied with the consent decrees in the two areas remaining open; and (2) why its supervision of the consent decrees should not be terminated. At the hearing, the district court acknowledged the parties' stipulation to defendants' substantial compliance in the two remaining areas. Counsel then presented arguments regarding whether there should be a termination of supervision. After the hearing and plaintiffs' separate submission of evidence, the district court terminated supervision over all provisions of the consent decrees except Paragraph A of the AFJ, addressing the maximum population of the facilities. The district court noted that it was a court of "limited jurisdiction," including jurisdiction over constitutional violations. As the Eighth Amendment does not prohibit "punishment," but only "cruel and unusual punishment," the district court determined that no relationship existed between the Eighth Amendment and the matters addressed in the consent decrees, with the exception of the excessive population issue. Plaintiffs did not object to the district court's determination of defendants' substantial compliance.
 
 
 9
 On February 25, 1992, defendants filed a motion to modify the consent decree so as to expand the categories of inmates who could be double-celled and the number of cells in the Justice Center permitted to be double-celled. After a March 6, 1992, hearing, the district court granted defendants' motion to modify the AFJ as to allow the increase in the population caps from 1,016 to 1,422 inmates by increasing double-celling. In addition, the district court approved changes in the classification restrictions for the purposes of determining double-celling candidates. Plaintiffs appeal the modification.
 
 I.
 
 10
 The district court's termination of supervision and jurisdiction is reviewed for an abuse of discretion. Akers v. Ohio Dep't. of Liquor Control, 902 F.2d 477, 479 (6th Cir.1990). Plaintiffs must demonstrate that there was no reasonable basis for the district court's termination order. United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).
 
 II.
 
 11
 A district court must determine whether and when to terminate supervision or jurisdiction over a consent decree by considering the specific terms of the consent decree. Youngblood v. Dalzell, 925 F.2d 954, 961 (6th Cir.1991). Several factors to be considered include: (1) any specific terms providing for continued supervision and jurisdiction over the consent decree; (2) the consent decree's underlying goals; (3) whether there has been compliance with prior court orders; (4) whether defendants made a good faith effort to comply; (5) the length of time the consent decree has been in effect; and (6) the continuing efficacy of the consent decree's enforcement. See Board of Educ. v. Dowell, 498 U.S. 237, 111 S.Ct. 630, 112 L.Ed.2d 715 (1991); Youngblood, 925 F.2d at 960-61. Court supervision is often expected to continue for several years, in order to assure compliance with the relevant decrees. Plyler v. Evatt, 924 F.2d 1321, 1329-30 (4th Cir.1991). When the defendants are shown to be in compliance with its terms and the objectives of the consent decree have been achieved, the district court's jurisdiction over the case may be terminated. Youngblood, 925 F.2d at 957-58.
 
 
 12
 The specific terms of the consent decrees and relevant orders make it clear that the district court had no authority to terminate supervision or jurisdiction over the consent decrees. The explicit language of the AFJ provided that the consent decree "shall continue in full force and effect until such time as the monitor certifies to this Court that there is compliance and that there has been [compliance] for a period of not less than 180 days." The monitor was required to conduct annual compliance inspections of the facilities through 1988 and as further directed. With the modification of the AFJ in 1988, the annual inspections were extended several years more, through July, 1991. Thus, prior to termination of supervision and jurisdiction, the monitor was to certify compliance with the consent decrees in July, 1991, and return for a final inspection 180 days later to determine whether the officials remained in compliance. However, the monitor's final report was never filed, as the district court terminated jurisdiction and supervision of the consent decrees in July, 1991.
 
 
 13
 Furthermore, upon the district court's termination of jurisdiction and supervision of the consent decrees, exceptions are found in the second sunset provision requiring monitoring of Paragraphs A, B, and D for a period of twenty years. Thus, in any event, the district court should not have terminated jurisdiction and supervision over Paragraphs A, B, and D. Therefore, upon considering the specific substantive terms of the consent decrees in conjunction with the monitor's final reports, the district court should not have terminated supervision and jurisdiction.
 
 
 14
 In the monitor's fifth report, he indicated seven areas in which he made an inquiry. Those areas included: (1) patrolling; (2) cell lighting; (3) acoustics; (4) quiet reading rooms; (5) educational programming; (6) counseling; and (7) outside work. In November, 1990, the district court found that defendants had substantially complied in five of the seven areas, and deferred judgment as to two remaining areas, acoustics and education programs, until January 1, 1991, thereby giving defendants an opportunity to comply. In making its findings, the district court relied on the monitor's subsequent report of substantial compliance in the five specified areas. At the April 12, 1991, hearing, the parties filed a stipulation as to defendants' substantial compliance in the acoustics and educational programming areas. As a result, on July 26, 1991, the district court terminated supervision and jurisdiction over the consent decrees, with the exception of Paragraph A of the AFJ dealing with the facilities' maximum population.
 
 
 15
 At the time of the termination, the monitor had not certified that defendants had complied with all areas of the consent decrees for at least 180 days. In fact, the monitor's reports indicated consistent non-compliance in several areas. Moreover, the district court failed to maintain jurisdiction and supervision for the required 180 days after finding substantial compliance in the areas of acoustics and educational programming. The district court's continuing enforcement and supervision of the consent decrees was essential to achieving the consent decrees' purposes and protecting plaintiffs' rights. The parties presented limited evidence regarding the compliance with the consent decrees, and the district court entered its judgment before it made any findings concerning compliance with all the terms of the decrees. The district court should have retained jurisdiction and supervision over the consent decrees in order to ensure full compliance and achievement of their goals. Thus, the court abused its discretion by terminating its supervision and jurisdiction.
 
 III.
 
 16
 Modification of a consent decree requires a "complete hearing and findings of fact," see Brown v. Neeb, 644 F.2d 551, 560 (6th Cir.1981), demonstrating that "new and unforeseen conditions have created a hardship," see Stotts v. Memphis Fire Dep't, 679 F.2d 541, 563 (6th Cir.1982), rev'd on other grounds, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984), thereby making impossible compliance with the decree. The district court's power to modify the terms of a consent decree "should not be exercised lightly." Stotts, 679 F.2d at 563 (citing United States v. Swift & Co., 286 U.S. 106, 114-15, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932)). In the area of institutional reform, consent decrees are subject to a lesser standard of modification, requiring the lower court to identify "a defect or deficiency in its original decree which impedes achieving its goal, either because experience has proven it less effective, disadvantageous, or because circumstances and conditions have changed which warrant fine-tuning the decree." Heath v. DeCourcy, 888 F.2d 1105, 1110 (6th Cir.1989). The modification must further the purpose of the consent decree, without upsetting the basic agreement between the parties. Id.
 
 
 17
 The Supreme Court adopted a restrictive, but flexible, standard to be applied in ruling on Fed.R.Civ.P. 60(b) motions in institutional reform litigation. Rufo v. Inmates of the Suffolk County Jail, --- U.S. ----, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). First, the movant must show that a "significant change in circumstances warrants revision of the decree." Id. --- U.S. at ----, 112 S.Ct. at 760. Second, the movant has the burden of proving significant changes that cause a consent decree to be "onerous," "unworkable," or "detrimental to the public interest." Id. --- U.S. at ----, 112 S.Ct. at 760-63. Third, if a movant agreed to a consent decree while anticipating changes in conditions that would make its performance onerous, there is a "heavier" burden to show that the movant: (1) agreed to the consent decree in good faith; (2) made a reasonable effort to comply; and (3) should be relieved of its obligations. Id. --- U.S. at ----, 112 S.Ct. at 761. Fourth, the lower court must determine whether "their proposed modification is suitably tailored to the changed circumstances." Id. --- U.S. at ----, 112 S.Ct. at 763.
 
 
 18
 In approving modification, the district court relied on unverified statements in the record, of which it took judicial notice, filed on defendants' behalf. The district court also relied on unauthenticated materials and oral argument by counsel to conclude that modification of the consent decree was necessary. The district court failed to conduct a "complete hearing" by not allowing any evidence or expert testimony to be presented in the March 6, 1992, motion hearing. Thus, the court failed to follow proper procedure in ruling on the modification motion.
 
 
 19
 The district court did not fully consider the Rufo factors in granting the motion to modify, although Rufo was decided shortly before the hearing. First, neither defendants nor the district court identified a "significant change in circumstances" warranting revision of the consent decree. Rufo, --- U.S. at ----, 112 S.Ct. at 760. In fact, overcrowding had been an ongoing problem over several years, resulting in the premature release of inmates. Second, the district court did not inquire into the good faith of defendants' settlement intentions or anticipation of changes in conditions that would make the consent decrees onerous and unworkable. Id. --- U.S. at ----, 112 S.Ct. at 760-63. Third, the district court failed to determine if the proposed changes were "suitably tailored to the changed circumstances." Id. --- U.S. at ----, 112 S.Ct. at 763. More importantly, however, the district court should have required defendants to present evidence in support of their position to allow double-celling and to increase the inmate population, with an opportunity then for the plaintiffs to contradict the evidence. In making our ruling, we are not unmindful of the burden on the docket that a case of this magnitude makes for it went through several judges and many lawyers. However, it also affects the constitutional rights of citizens, so the courts must be ever vigilant to preclude a termination or modification of proceedings until everyone affected has an opportunity to be heard. Therefore, we VACATE the district court's modification of the consent decree and REMAND this action for further consideration.
 
 
 
 *
 The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 On appeal, this court agreed that the district court should not have sua sponte imposed the sunset provision on the AFJ. See Heath v. Wood, 811 F.2d 606 (6th Cir.1986) (unreported)
 
 
 [2]
 The Hamilton County Municipal Court judges intervened as a group, claiming that their state law sentencing rights were being eroded by the AMAFJ