Jackson D. WATTS, Jr., and all others similarly situated, Plaintiffs,

v.

Gerald T. McFAUL, Robert Pace, Virgil E. Brown, Mary Boyle, Timothy Hagan, Leo M. Spellacy, State of Ohio, City of Cleveland, Defendants.

No. C84–3624.

United States District Court,
N.D. Ohio,
Eastern Division.

Nov. 21, 1994.

Terry H. Gilbert, Cleveland, OH, for plaintiffs.

Patrick Murphy, Michael Pokorny, Shawn Mallamad, Solomon Balkaj, Law Dept., R. Paul Cushion, III, Cleveland, OH, for defendants.

## MEMORANDUM OF OPINION AND ORDER TERMINATING CONSENT JUDGMENT

WELLS, District Judge.

For the last seven years, the parties in this prisoner class action case have been operating under an injunctive consent decree issued by former United States District Judge Alvin I. Krenzler[1] in November of 1987. The consent decree applies to the Cuyahoga County Correctional Facility located at 1215 West Third Street, Cleveland, Ohio. The decree incorporates all orders promulgated in *Sykes v. Krieger, et al.*, Case No. C71–1181, filed some 23 years ago, including the partial consent decree in that case which applied to the prior Cuyahoga County Jail located at 1560 East 21st Street, Cleveland, Ohio.

---

1. Now retired.

Injunctive relief in institutional reform litigation is "not intended to operate in perpetuity." *Oklahoma City Public Schools v. Dowell*, 498 U.S. 237, 248, 111 S.Ct. 630, 637, 112 L.Ed.2d 715 (1991). Such injunctions are justified by the existence of a constitutional violation. Termination of the injunction after a period of compliance recognizes that federal court control should not extend beyond the time necessary to remedy the violation. *Id.*

On review of the lengthy record in this matter and for the reasons which follow, the Court concludes that continued supervision of the Cuyahoga County jails under the consent decree in this case is no longer necessary to remedy the concerns which prompted it, and the interests of the parties and the public will be served by termination of the decree.

## INTRODUCTION

This case came on for a hearing on September 14, 1994 regarding defendants' compliance with the consent judgment and other orders previously entered in this case. Court-appointed Monitor Judge Richard J. McMonagle reported to the Court regarding the defendants' compliance, concluding that the Cuyahoga County Correctional Facility was complying with the consent decree in all respects. In particular, Judge McMonagle noted that the construction of a new jail facility known as "Jail II" had been completed, adding a total of at least 480 beds to those available in the "Jail I" facility. In addition, he reported that a construction project was underway in Jail I which would further increase the capacity of the county jail system, and another project was in the design and planning stage.

At the hearing, the parties were advised that termination of the consent decree was under consideration. All parties were given leave to file briefs and evidence regarding this issue on or before October 1, 1994. No briefs or evidentiary materials have been filed, although defendant Gerald T. McFaul, Cuyahoga County Sheriff, forwarded a letter

to the Court concerning inmate population issues which arise with the opening of Jail II.

## PROCEDURAL HISTORY

1. *Sykes v. Kreiger,* Case No. C71–1181.

This case has a long history which begins with the filing of the class action complaint in *Sykes v. Kreiger,* Case No. C71–1181, some 23 years ago. *Sykes* concerned the conditions at the Cuyahoga County Jail located at 1560 East 21st Street, Cleveland, Ohio (the "Payne Avenue Jail"). The plaintiff class certified in that case included "all persons confined or who will be confined at the Cuyahoga County Jail."

The factual basis for the action in *Sykes* is well-documented in the record and in the various reported decisions in that case, particularly *Sykes v. Kreiger,* 451 F.Supp. 421 (N.D.Ohio 1975). In that decision, then-United States District Judge Robert B. Krupansky[2] entered an extensive order governing, among other things, the maximum population of the jail, the psychiatric care of inmates, and the content and use of the jail library. In addition, the Court entered a partial consent decree concerning, e.g., disciplinary procedures; food service; medical services; inmate communications by mail, telephone and visitation; heating; and programs for recreation, education, counseling, and religious worship. This order and the other orders entered in the *Sykes* case were later incorporated into the consent decree in this case.

2. *Watts v. McFaul,* Case No. C84–3624.

The complaint in the present case was originally filed on November 23, 1984, more than nine years after the entry of the consent decree in *Sykes.* The complaint was amended on March 13, 1985. The amended complaint stated a claim under 42 U.S.C. § 1983 on behalf of the individual plaintiff and "all other inmates of the Cuyahoga County Correctional Facility" located at 1215 West Third Street, Cleveland, Ohio ("Jail I"). The defendants named in the amended complaint are Gerald T. McFaul, the Cuyahoga County Sheriff; Robert Pace, the Director of Corrections appointed by Sheriff McFaul; the Cuyahoga County Commissioners; and the Chief Judge of the Court of Common Pleas of Cuyahoga County, Ohio. The City of Cleveland and the State of Ohio were later added as defendants, and the Chief Judge was dismissed as a party.

The amended complaint asserted, among other things, that Jail I was consistently housing 850 to 900 inmates although it was constructed to house only 770 inmates. In addition, the complaint asserted that the defendants had violated the inmates' right to free worship, and failed to maintain adequate staffing, resulting in the denial of inmate services.

### a. *Class Certification.*

On January 8, 1987, plaintiffs moved to certify a class of plaintiffs consisting of "all persons who are inmates at the Cuyahoga County Correction Center." Defendants concurred in this motion. At the same time, the parties also apparently submitted a proposed consent decree for the Court's consideration. United States Magistrate Judge Jack B. Streepy recommended that the Court grant the motion to certify the class and preliminarily approve the consent decree. On February 5, 1987, Judge Krenzler entered an order accepting and adopting the Magistrate Judge's recommendations. Thus, the class actually certified in this case included "all persons who are inmates at the Cuyahoga County Correction Center."

The parties subsequently submitted two stipulations to amend the description of the class in the proposed consent decree. The last of these proposed amendments sought to define "plaintiffs" to include "all persons confined or who will be confined in the Cuyahoga County Correction Center (i.e., the class in the present action shall be the same as the class in *Sykes v. Kreiger et al.,* Civil Action No. C71–1181 (Krupansky, J))." Neither of these stipulated amendments were entered by the Court, so the class continues

---

**2.** Now United States Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit.

to include only persons who were inmates of Jail I at the time the class was certified in 1987. The class does not include future inmates.

### b. *Consent Decree.*

Following Judge Krenzler's preliminary approval of the consent decree, the class members were notified of the proposed settlement and a hearing was held before Magistrate Judge Streepy on August 21, 1987. The Magistrate Judge then recommended that the Court accept and adopt the proposed consent decree. In an order entered on November 13, 1987, Judge Krenzler accepted and adopted the proposed consent decree which he had preliminarily approved.

The consent decree reached back to the *Sykes* case filed more than 16 years earlier, and "specifically incorporate[d] as if fully rewritten all Orders of this Court heretofore promulgated in *Sykes v. Kreiger, et al.*, Civil Action No. C71–1181 (Krupansky, J.) and the Partial Consent Judgment in *Sykes, supra.*" The consent decree includes express provisions regarding religious worship services and religious programs; counselling and reading materials; educational programs; library use; social workers; recreation; medical services; temperature regulation; effective program operation; inmate population; and monitoring. Many of these provisions refer expressly to the orders entered in *Sykes* concerning the Payne Avenue Jail.

Approximately one and one-half years after the entry of the consent decree, on May 1, 1989, a motion to show cause was filed concerning the defendants' compliance. A hearing was held regarding this motion, and several status conferences with Judge Krenzler and meetings with the court-appointed monitor, Judge Richard J. McMonagle, appear in the record between 1989 and 1991. In October 1991, Judge Krenzler ordered that, inasmuch as Jail I was not a sentencing facility, all misdemeanants sentenced to that facility should be released ten days from the date of the Court order; felons sentenced to serve a prison term there should have their cases reviewed by the trial judge for an alternative resolution. The sheriff was also ordered not to accept any prisoner sentenced there until further court order.

From March to June 1992, Judge Krenzler held two hearings and issued a series of orders regarding the selection of a site for a new correctional facility. Since then, two status conferences have been held, and three short orders were issued, two concerning administrative matters, and one regarding the sentencing of three prisoners. No other motions have been filed and no additional orders have been issued. According to the Court Monitor's report at the hearing on September 14, 1994, a new jail facility, Jail II, has been completed, and the defendants are in compliance with the consent decree.

### *TERMINATION OF CONSENT DECREE*

■ This Court has the power to consider termination of the consent decree *sua sponte.* The Court's ongoing obligation to supervise compliance with the consent decree carries with it a correlative discretion to modify or terminate the decree. This is particularly true where, as here, the injunction affects the operation of a governmental institution, and therefore implicates public interests beyond the interests of the parties to the suit. "[N]otwithstanding the parties' silence or inertia, the district court is not doomed to some Sisyphean fate, bound forever to enforce and interpret a preexisting decree without occasionally pausing to question whether changing circumstances have rendered the decree unnecessary, outmoded, or even harmful to the public interest." *In re Pearson*, 990 F.2d 653, 658 (1st Cir.1993).

■ In prison overcrowding cases in particular, Congress has recognized the need to review the terms of judgments and consent decrees from time to time to consider whether changes in circumstances might justify modification. The crime bill recently enacted by Congress adds a new provision to Title 18 of the United States Code, § 3626, which provides in pertinent part:

(c) PERIODIC REOPENING.—Each Federal court order or consent decree seeking to remedy an eighth amendment violation shall be reopened at the behest of a defendant for recommended modification at a minimum of 2-year intervals.

This new section applies to outstanding orders like the consent decree in the present case. While specifically addressed to modification, not termination, of consent decrees, the statute nonetheless recognizes that many factors may warrant a periodic review of orders which affect the administration of prisons.

■ Injunctive relief in institutional reform litigation, whether entered by the consent of the parties or after a Court decision on the merits, is intended only to remedy a constitutional violation, not to displace local decision-making and control forever. *Oklahoma City Public Schools v. Dowell,* 498 U.S. 237, 248, 111 S.Ct. 630, 637, 112 L.Ed.2d 715 (1991). Termination of an injunction after a period of compliance recognizes that federal court control should not extend beyond the time necessary to remedy the violation which prompted it. *Id.* "In weighing the possibility of dissolving the decree, the district court may properly consider the length of time over which this particular decree has been in effect and the continuing efficacy of its enforcement." *Youngblood v. Dalzell,* 925 F.2d 954 (6th Cir.1991).

■ The modification or termination of consent decrees in institutional reform litigation is subject to a flexible standard. "[A] flexible approach is often essential to achieving the goals of reform litigation," particularly "[b]ecause such decrees often remain in place for extended periods of time, so the likelihood of significant changes occurring during the life of the decree is increased." *Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. 367, ——, 112 S.Ct. 748, 758, 116 L.Ed.2d 867, 884 (1992). Thus, a consent decree may be terminated or modified if there have been significant changes in factual conditions or in law. *Id.,* 506 U.S. at ——, 112 S.Ct. at 886, 116 L.Ed.2d at 886; *Sweeton v. Brown,* 27 F.3d 1162 (6th Cir.1994). Factual changes must be such that " 'it is no longer equitable that the judgment should have prospective application,' not [that] it is no longer convenient to live with the terms of a consent decree." *Rufo,* 502 U.S. at ——, 112 S.Ct. at 758, 116 L.Ed.2d at 884.

■ Before a consent decree may be modified or terminated, the parties must be given notice of the Court's intended action. *See Dowell,* 498 U.S. at 246, 111 S.Ct. at 636. An evidentiary hearing may often be necessary to determine whether modification or termination of a consent decree is warranted. *See Heath v. DeCourcy,* 992 F.2d 630 (6th Cir.1993); *but cf. Patterson v. Newspaper and Mail Deliverers' Union,* 797 F.Supp. 1174, 1182 (S.D.N.Y.1992), *aff'd,* 13 F.3d 33 (2d Cir.1993). At the hearing on September 14, 1994, the parties were advised that termination of the consent decree was under consideration, and were granted leave to present evidence and briefs on this issue. They have declined to do so.

■ Many of the concerns addressed by the orders in the *Sykes* case (and carried forward by the consent decree in this case) are outmoded; these orders no longer embody the current interests of the parties. For example, orders from the 23 year old *Sykes* case concerning the maximum number of inmates who may be housed at the Payne Avenue Jail are irrelevant to this litigation, which concerns an entirely different facility.

Other issues critical to the *Sykes* litigation were not active issues in this case. For instance, the disciplinary procedures outlined in the partial consent judgment in *Sykes* were not the subject of further challenge, although the consent decree regarding disciplinary procedures was incorporated into this case.

The primary purpose of this consent decree was to remedy overcrowding in the Cuyahoga County jails. With the opening of Jail II, the County has eliminated overcrowding in Jail I. The Court Monitor reported that the defendants were substantially complying with the other provisions of the consent decree as well. Plaintiffs have not challenged the monitor's findings.

Since plaintiffs in this case included only persons who were inmates at Jail I at the time the class was certified, and Jail I is not a sentencing facility, it is doubtful that *any* of the plaintiffs remain in Jail I today, more than seven years after the entry of the consent decree. Current inmates are not parties to this case, so they lack standing to demand enforcement of the consent decree

on their own behalf. Thus, there is no interested plaintiff to challenge the defendant's conduct under the consent decree. Under these circumstances, continued court supervision of compliance with the consent decree is an empty gesture.

Finally, termination of the consent decree here does not affect other persons' ability to challenge the constitutionality of conditions in the County jails. In fact, at least two cases are now pending before this Court regarding jail conditions, *Dehler v. Stafford,* Case No. 1:92CV1944, and *Nelson v. Cuyahoga County,* Case No. 1:94CV0439. These cases, with plaintiffs who have an interest in the outcome of the litigation and who can address existing issues, are better vehicles to address any constitutional concerns with the jails as presently operated than continued supervision under the consent decree which has served its purpose here.

### CONCLUSION

The Court finds that the consent decree in this case has achieved its primary purpose of alleviating overcrowding at Jail I, and the defendants have substantially complied with the decree's other requirements. Further court supervision is unnecessary and not in the public interest. Therefore, the Court hereby vacates the consent decree, dissolves the injunctions imposed by it, and terminates this litigation.