**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 95-3843

_____

| | | |
|---|---|---|
| Samuel Lee McDonald; Thomas Henry Battle; | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| Alan J. Bannister, | * | |
| | * | Appeals from the United States |
| Plaintiff-Appellant, | * | District Court for the |
| | * | Eastern District of Missouri. |
| v. | * | |
| | * | |
| Mel Carnahan; Dora Schriro; George Lombardi; Michael Bowersox, | * | |
| | * | |
| | * | |
| Defendants-Appellees. | * | |

_____

No. 95-3845

_____

| | |
|---|---|
| Samuel Lee McDonald; | * |
| | * |
| Plaintiff-Appellant, | * |
| | * |
| Thomas Henry Battle; Alan J. Bannister, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| Mel Carnahan; Dora Schriro; George Lombardi; Michael Bowersox, | * |
| | * |
| | * |
| Defendants-Appellees. | * |

_____

Submitted:  January 13, 1997

Filed: April 2, 1997
_____

Before BOWMAN and MURPHY, Circuit Judges, and JONES,[1] District Judge.
_____

BOWMAN, Circuit Judge.

The plaintiffs, who are Missouri prisoners confined under sentence of death, filed this class action in August 1985, challenging as unconstitutional the conditions of their confinement in the Missouri State Penitentiary in Jefferson City.  The United States District Court for the Western District of Missouri[2] certified a class of present and future Missouri death-row inmates.  The parties soon negotiated a detailed consent decree regulating a number of aspects of day-to-day life on death row, and the court approved the decree, following several addenda, in January 1987.  We first saw this case in 1988, when we affirmed the court's award of attorney fees to counsel for the plaintiffs.  See McDonald v. Armontrout, 860 F.2d 1456 (8th Cir. 1988).

The following year, the defendants filed motions to move death row to the newly constructed Potosi Correctional Center and to modify the consent decree to reflect the different conditions at the new prison.  The court granted both motions.  On the plaintiffs' appeal of the modification of the consent decree, we

_____

[1]The Honorable John B. Jones, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

again affirmed.  See McDonald v. Armontrout, 908 F.2d 388 (8th Cir. 1990) (McDonald II).  Because the Potosi prison is beyond the boundaries of the Western District of Missouri, the modified decree provided for a transfer of jurisdiction to the Eastern District of Missouri.

Not long after their arrival in Potosi, the plaintiffs moved the District Court[3] to hold the defendants in contempt, challenging specific conditions of their confinement in the new prison.  Before the court acted on that motion, the defendants "mainstreamed" the plaintiff class into the general prisoner population.  (As a result, a true "death row" no longer exists in Missouri, but we will continue to use that term as a form of shorthand.)  The court denied the contempt motion.

The defendants filed a motion in 1991 to dismiss this case, which the District Court interpreted as a motion to vacate the consent decree and terminate its continuing jurisdiction.  The court received written submissions from the plaintiffs, conducted six days of evidentiary hearings, and considered further materials submitted by both sides. Finally, in September 1995, the District Court filed an exhaustive eighty-five-page opinion vacating the consent decree and terminating its jurisdiction.  The plaintiffs appeal, and we affirm.

At the outset, we consider the effect on this action of a section of the Prison Litigation Reform Act, 18 U.S.C.A. § 3626 (West Supp. 1997), which imposes restrictions on the duration of prospective relief in actions challenging prison conditions.  See id. § 3626(b).  The Act took effect on April 26, 1996, after the

---

[3]The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

-3-

District Court rendered its order dismissing this case, and so the District Court did not have an opportunity to consider whether the Act should apply to this case.  The plaintiffs, who filed their opening brief in this appeal shortly after the Act became law, did not address the new law and have not filed a reply brief.  The state's brief argues in conclusory fashion that the Act applies and that the dismissal of the case was proper.  Because the parties and the record have given us little to work with on this issue, we will apply the law prevailing when the District Court filed its opinion and leave the Act for another day.[4]

We review the District Court's decision to terminate its supervision over the consent decree for abuse of discretion.  See Heath v. DeCourcy, 992 F.2d 630, 633 (6th Cir. 1993); see also McDonald II, 908 F.2d at 390 (applying same standard to modification of terms of decree).  In deciding whether to terminate its jurisdiction, a district court should consider several factors:

> (1) any specific terms providing for continued supervision and jurisdiction over the consent decree; (2) the consent decree's underlying goals; (3) whether there has been compliance with prior court orders; (4) whether defendants made a good faith effort to comply; (5) the length of time the consent decree has been in effect; and

---

[4]We recognize that other prisoners, including some within our Circuit, have raised constitutional challenges to the validity of the Act.  See, e.g., Plyler v. Moore, 100 F.3d 365, 371-75 (4th Cir. 1996) (rejecting a number of constitutional challenges); Gavin v. Ray, No. 4-78-CV-70062, 1996 WL 622556, at *2-4 (S.D. Iowa Sept. 18, 1996) (holding § 3626(b)(2) unconstitutional); Lyon v. Vande Krol, 940 F. Supp. 1433, 1436-39 (S.D. Iowa 1996) (holding 28 U.S.C.A. § 1915(g), also added by the Act but concerning in forma pauperis proceedings, unconstitutional).  The district judges who decided Gavin and Lyon have certified these cases for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  In this case, we need not and do not reach any issues concerning the constitutionality of the Act.

-4-

(6) the continuing efficacy of the consent decree's enforcement.

Heath, 992 F.2d at 633; see also Board of Educ. of Okla. City Pub. Sch., Indep. Sch. Dist. No. 89 v. Dowell, 498 U.S. 237, 249 (1991) (noting that, in considering whether to lift desegregation decree, court should consider past compliance with court orders and defendant's good faith); Johnson v. Heffron, 88 F.3d 404, 407 (6th Cir. 1996) (ordering prison consent decree dissolved where its goals had been achieved and no constitutional violation was likely after dissolution); Inmates of Suffolk County Jail v. Rufo, 12 F.3d 286, 293 (1st Cir. 1993) (suggesting that court should consider whether constitutional violation has been remedied, defendants have complied with decree in good faith for reasonable period, and violation is unlikely to be repeated if decree is terminated) (dicta); Kindred v. Duckworth, 9 F.3d 638, 644 (7th Cir. 1993) ("[D]ecrees imposing obligations upon state institutions normally should be enforceable no longer than the need for them.").

We conclude that the District Court did not abuse its discretion when it dissolved the decree in the case at bar. We begin with the goals and terms of the consent decree. In McDonald II, we identified the purpose of the decree at issue here as "to provide constitutionally acceptable conditions of confinement for inmates on death row. The decree is simply a plan for ensuring that the capital punishment unit complies with constitutional requirements." McDonald II, 908 F.2d at 391. As modified in 1989, the decree itself provides that jurisdiction is transferred to the Eastern District "to insure compliance with the foregoing provisions until such time as all provisions of this decree have been fully implemented." Modified Decree ¶ 20.[5] It follows that

---

[5]The plaintiffs do not challenge the District Court's conclusion that the only provisions of the decree presently in effect are those provisions set forth in Judge Wright's May 10, 1989 order modifying the decree in connection with the move to Potosi.

-5-

once the decree had accomplished its purpose, remedying any conditions of death row that may have fallen short of constitutional standards, the District Court properly could vacate it and bring this case to a close.

We next consider whether the state complied or attempted in good faith to comply with court orders (namely, the terms of the decree). The substantive terms of the decree address the conditions of life on death row in some detail, but the decree does not provide the plaintiffs with all the privileges they claim. In particular, the following concerns raised by the plaintiffs in their objections to the District Court's dismissal of the case, although related to general topics covered in the decree, bear no real connection to the actual terms of the decree: (1) the number of telephones, the lack of tables near telephones, and the requirement that administrative segregation inmates be handcuffed during calls; (2) the manner in which G.E.D. programs are provided; and (3) the presence of light early in the morning and the absence of light late at night. See Modified Decree ¶¶ 4, 12, 13. Accordingly, these objections add nothing to the plaintiffs' argument that the District Court abused its discretion in vacating the decree.[6]

---

[6]Similarly, the prisoners' argument that the District Court should have reopened the evidentiary hearings in light of new developments (an increase in the population of the prison and a prison-wide lockdown in August 1995) is meritless. The District Court correctly determined that none of these developments, and none of the prisoners' grievances attendant thereto, was relevant to the consent decree.

In two areas, the District Court did find that the defendants may have violated the strict terms of the decree.  One provision of the decree requires the defendants to take reasonable care to avoid the "scattering of legal materials" during cell searches.  Modified Decree ¶ 2(b).  The District Court found some evidence that prisoners' legal materials have been scattered during searches, but found that any scattering was not done in bad faith.  (This is not quite the same as finding that the defendants took reasonable care to avoid scattering the materials, as the decree requires.)  But the court also found that any scattering that occurred was not for any improper purpose, was not retaliatory in nature, and did not actually interfere with the plaintiffs' access to the courts.  See Scher v. Engelke, 943 F.2d 921, 924 (8th Cir. 1991) (retaliation), cert. denied, 503 U.S. 952 (1992); Lewis v. Casey, 116 S. Ct. 2174, 2180 (1996) (access to courts).  The plaintiffs' only objection to dismissal on this issue is their bare assertion that legal materials have, on occasion, been scattered.  Without more--such as a pattern or practice of intentional scattering or an actual constitutional violation--we cannot conclude that the District Court abused its discretion by vacating the decree over this objection.

The District Court also noted some shortfalls in the state's compliance with the decree's provisions relating to medical services.  The decree requires that inmates be permitted to visit the eye clinic within eight working days of making a request and that medication be dispensed within twenty-four hours of prescription.  See Modified Decree ¶ 5(d)-(e).  The court noted that prisoners now have, at most, a two- to four-week delay in seeing an optometrist and a five-day delay in receiving prescription medication.  The court concluded that these delays were not caused by bad faith on the part of the defendants, but rather by shift changes, the optometrist's limited hours, and the

-7-

lack of a pharmacy on the prison premises. Furthermore, the court concluded that any delays in no way constituted deliberate indifference to the prisoners' medical needs and thus posed no constitutional problems. See, e.g., Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir. 1990) (granting judgment to defendants in action alleging one-month delay in treatment of non-acute condition). In light of the defendants' good-faith efforts to comply with this section of the decree and the lack of any constitutional difficulties presented by the delays, we cannot conclude that the District Court abused its discretion in vacating the decree over this objection.

After determining that the defendants had complied with the other terms of the consent decree, the District Court considered whether the state was likely to impose unconstitutional conditions on the prisoners if the decree were vacated. The court found no reason to believe that would happen, and the plaintiffs have suggested none to us. We hardly need to add that the prisoners may challenge, by means of a separate lawsuit, any unconstitutional situation that may arise in the future.

After more than ten years of litigation, the District Court concluded that the consent decree in this case should be vacated and the case dismissed. In light of the deference we owe to that decision, see Heath, 992 F.2d at 633, and to the day-to-day judgments of the defendants in the operation of the prison, see Lewis, 116 S. Ct. at 2185, we cannot say that the order of the District Court dismissing the case is an abuse of that court's discretion.

The order of the District Court is affirmed.

A true copy.

Attest:

        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT