Ronald BRADLEY, et al., Plaintiffs (84–1364), Plaintiffs-Appellants (84–1365),

v.

William J. MILLIKEN, et al., Defendants-Appellees,

Detroit Federation of Teachers, Intervening Defendant-Appellant (84–1364), Intervening Defendant (84–1365).

Nos. 84–1364, 84–1365.

United States Court of Appeals, Sixth Circuit.

Argued June 13, 1985.

Decided Sept. 16, 1985.

Theodore Sachs (argued), Sachs, Nunn, Kates, Kadushin, O'Hara, Heveston, Waldman, John Runyan, Jr., Detroit, Mich., for appellants.

Paul J. Zimmer, Jr., Lead Counsel, Asst. Atty. Gen., Lansing, for Milliken et al.

George T. Roumell, Jr. (argued), Riley & Roumell, Detroit, for School Dist. of City of Detroit.

Dr. Kenneth Harris, Dr. Philip E. Runkel, William Waterman, Pontiac, Mich., for LULAC.

Before MERRITT and CONTIE, Circuit Judges, and EDWARDS, Senior Circuit Judge.

CONTIE, Circuit Judge.

This appeal questions the propriety of an order of the district court terminating portions of the remedy imposed in this school desegregation case. The appellants are the plaintiff class [1] and the Detroit Federation of Teachers, a defendant in intervention. The district court's order provided for the termination of its jurisdiction over the Detroit school system's code of student conduct and community relations program. It also disbanded the court-created monitoring commission. Due to procedural deficiencies in the district court's actions, we find it necessary to remand for further proceedings.

### I.

This litigation began on August 18, 1970, when the plaintiff class filed a complaint alleging that public officials had intention-

---

**1.** The plaintiff class consists of Ronald Bradley, who was a school-aged child at the time the suit was filed, his mother, various other named individuals and their parents and a class consisting of "all parents having children attending the public schools of the City of Detroit, Michigan, on their own behalf and on behalf of their minor children." The NAACP has also participated in this action as a party plaintiff. The defendants are state and local educational officials and agencies, including the State Superintendent of Public Instruction and the Detroit Board of Education.

ally segregated the Detroit school system. State and local authorities have been found liable for intentional segregation. *See Bradley v. Milliken,* 338 F.Supp. 582 (E.D. Mich.1971), *aff'd,* 484 F.2d 215 (6th Cir. 1973) (en banc). In considering the proper remedy, the late District Judge Roth concluded that suburban school districts, against whom there had been no finding of liability, would have to be included in any successful desegregation plan. *See Bradley v. Milliken,* 345 F.Supp. 914, 916 (E.D. Mich.1972). This court affirmed the inclusion of non-city school districts in a court-ordered desegregation plan. *See* 484 F.2d at 249. The Supreme Court disagreed, holding that the remedy must be limited to the Detroit school system. *See Milliken v. Bradley,* 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974).

On remand, this case was reassigned to District Judge DeMascio in light of Judge Roth's death. The desegregation plan eventually adopted by Judge DeMascio not only ordered pupil reassignment but also incorporated proposals for what have come to be known as "educational components." These elements of the plan were designed to eliminate current effects of past discrimination. They included items such as remedial reading programs, guidance and counseling programs and vocational training, as well as the community relations and uniform code of student conduct programs which are at issue in this appeal. The state defendants appealed the propriety of four of these "educational components." We affirmed the remedy, *see Bradley v. Milliken,* 540 F.2d 229 (6th Cir.1976), as did the Supreme Court, *see Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977). The three portions of the remedy at issue in this appeal were not the subject of any appeals.[2]

The community relations program, the uniform code of student conduct and the monitoring commission came into existence as follows. On May 21, 1975, the district court ordered the Detroit Board of Education to submit a proposed code of student conduct. In the district court's view, a uniform code of student conduct was necessary to "protect the students against arbitrary and discriminatory exclusions, suspensions or explusions and to assure that disruptions in the school or classroom will be dealt with in every instance." *See Bradley v. Milliken,* 402 F.Supp. 1096, 1142–43 (E.D.Mich.1975). On July 3, 1975, the district court rejected the Board's first draft of the code and provided guidelines for redrafting. On October 29, 1975 the district court reviewed the second draft and again found defects in the Board's efforts. Instead of again sending the draft back to the Board, the district court itself amended the draft. The court then ordered the use of this code.

On July 18, 1975, the district court requested the Detroit Board to submit a proposed community relations program. *See* 402 F.Supp. at 1143. On May 11, 1976, the district court issued very specific guidelines for the structure of the program and ordered the Detroit Board to institute a community relations program consistent with the court's instructions. This court-ordered program was subsequently adopted.

An August 15, 1975 memorandum opinion stated that the "court's order will provide for a court-created monitoring system to audit efforts made to implement the court's desegregation orders." *See* 402 F.Supp. at 1145. The purpose of the monitoring commission was to aid the court in its "obligation to audit efforts to implement its orders." *Id.* The monitoring commission came into formal existence on October 16, 1975, when the court accepted and adopted a plan for the monitoring commission submitted by the State Superintendent of Public Instruction.

Since August of 1980, this case has been assigned to a triumvirate of district

---

**2.** The only portions of the remedy challenged on appeal were those providing for a remedial reading program, in-service training, revised testing procedures and a counseling and career guidance program. *See* 433 U.S. at 275–76, 97 S.Ct. at 2754–55; 540 F.2d at 240–41.

judges.[3] This panel now consists of Chief District Judge Feikens, District Judge Churchill and District Judge Cohn.[4] At the time the panel assumed control of the case, there were pending motions from the plaintiff class for enforcement of the various educational remedies and from the Detroit Federation of Teachers for enforcement of the order to implement the uniform code of student conduct. The panel encouraged the parties to negotiate and settle these and other issues. The product of the negotiations was a June 1981 stipulation between the parties. The parties agreed on the amount which the state defendants would contribute to the cost of providing for the educational remedies. To aid in assuring compliance, the stipulation placed reporting requirements on the Detroit Board and the state defendants. It also provided a date for termination of these remedies:

> At the conclusion of the 1987–1988 school year, except as otherwise provided by law, the reading, counseling and career guidance, uniform code of student conduct, school-community relations, vocational education, and bilingual-bicultural components shall be deemed completed, upon the filing by the Detroit Board of Education of the final component report by March 1, 1988, and defendant Detroit Board of Education shall then be relieved of any further obligation to implement said components pursuant to the Court's judgment and orders
>
> . . . .

In consideration of the various concessions made by the parties, the pending motions for compliance were withdrawn. The question of the continued existence of a monitoring commission[5] was left unresolved:

> This Agreement does not modify the prior orders of the Court concerning the authority and function of the Monitoring Commission, without prejudice to the right of any party to petition the Court concerning changes regarding same.

The district court conducted public hearings on the propriety of the stipulation and on August 28, 1981, it adopted the stipulation as an order of the court.

On April 24, 1984, the district court, 585 F.Supp. 348 (D.C.Mich.1984), entered the order which is the subject of this appeal. It held that the court-ordered code of student conduct would be terminated upon the promulgation by the Detroit Board of its own code of student conduct. The order similarly provided that the court-created community relations program would be terminated upon the adoption by the Detroit Board of its own community relations program. Both of these actions were predicated upon the existence of state laws which either allowed or required the Board to institute the programs it had formerly been under court order to implement.[6] Finally,

---

**3.** In an appeal unrelated to the issues in this case, we found that Judge DeMascio had correctly denied a motion for recusal. We nonetheless held that despite the propriety of Judge DeMascio's ruling, the "bitter feelings that have developed" counseled for a prophylatic reassignment. *See Bradley v. Milliken,* 620 F.2d 1143, 1158 (6th Cir.), *cert. denied,* 449 U.S. 870, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980); *Bradley v. Milliken,* 495 F.Supp. 217 (E.D.Mich.1980) (opinion on remand).

**4.** District Judge Boyle was originally a member of this panel. Judge Churchill replaced Judge Boyle when the latter left the district court to join the Michigan Supreme Court.

**5.** The future role of the monitoring commission was first questioned by Judge DeMascio in a 1978 opinion. *See Bradley v. Milliken,* 460 F.Supp. 299, 318–20 (E.D.Mich.1978).

**6.** In discussing the code of student conduct, the district court stated:

> [O]ur review of the laws of Michigan relating to the authority of the State Board of Education, the State Superintendent and the Detroit Board tells us that there is ample legal authority for placing complete responsibility for assuring discipline in the Detroit schools, which is the goal of the student code of conduct, in the statutorily constituted agencies without the need of court supervision.
>
> . . . . .
>
> Accordingly we are bringing an end to the requirement that our student code of conduct be part of the remedy in this case. We will provide ample lead time for the Detroit Board to adopt a student code of conduct.

In discussing the community relations program, the court stated:

> [O]n August 11, 1983 the Detroit Board filed a motion to allow changes in the school-com-

the court held that the monitoring commission would be disbanded upon Detroit Board's compliance with the order to create its own code of student conduct and community relations program. The court based this action on a concern for the friction that had developed between the Detroit Board and the monitoring commission and because "with termination of the student code of conduct and the school-community relations components, there is no longer any reason for us to maintain a Monitoring Commission as an arm of the Court."

## II.

 The Detroit Board of Education filed a motion to dismiss this appeal, arguing that this court lacks jurisdiction because of the absence of a "final judgment" or an appealable interlocutory order. *See* 28 U.S.C. §§ 1291, 1292(a)(1). We need not decide whether this order could be characterized as "final" within the meaning of 28 U.S.C. § 1291 or whether it might be within the "collateral order" exception to the rule requiring final judgments [7] because we conclude we have jurisdiction under § 1292(a)(1). That statute gives this court jurisdiction over orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1292(a)(1). In deciding whether an order modifies an injunction and is thus appealable under § 1292(a)(1), courts have examined both whether there was an un-

derlying order which was injunctive in character and whether the order being appealed can be said to have modified that initial order. *See Hoots v. Commonwealth of Pennsylvania,* 587 F.2d 1340, 1348 (3d Cir.1978). A third factor to be considered is the practical consequences of the order challenged on appeal. The Supreme Court has stated:

> Because § 1292(a)(1) was intended to carve out only a limited exception to the final-judgment rule, we have construed the statute narrowly to ensure that appeal as of right under § 1292(a)(1) will be available only in circumstances where an appeal will further the statutory purpose of "permitting litigants to effectively challenge interlocutory orders of serious, perhaps irreparable, consequence." ... Unless a litigant can show that an interlocutory order of the district court might have a "serious, perhaps irreparable, consequence," and that the order can be "effectively challenged" only by immediate appeal, the general congressional policy against piece-meal review will preclude interlocutory appeal.

*See Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981) (citation omitted).

 It is clear that the underlying orders in this case—the original orders imposing the remedies and the 1981 stipulation adopted by the court as a consent decree—were injunctive in character. The Detroit Board does not contend otherwise. Rather, it argues that these injunctive or-

---

munity relations program now in place. The Detroit Board noted that a recent amendment in Michigan law requires such a program. The Monitoring Commission and the parties responded that the present program complied with the new law and there was no need to relieve the Detroit Board of the obligation to maintain this component. More important, it appeared to us that state law provides ample authority for assuring a proper school-community relations program in the Detroit school system and that there is no present need for a court-ordered school-community relations program.

Accordingly, we·are bringing to an end the requirement of our school-community relations program as part of the remedy in this

case. We will provide ample lead time for the Detroit Board to put in place a school-community relations program.

The court's provisions for the termination dates of both programs were identical. The community relations program and the court-created code of student conduct were to terminate upon the adoption of similar programs by the Detroit Board. This adoption was to occur by December 31, 1984.

7. *See generally Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

ders were not "modified" because the provisions of the order being appealed are conditional. That is, the court's order terminating the remedies was to have no effect until certain actions were taken by the Detroit Board. This argument overlooks the fact that the 1981 stipulation and consent decree provided that the duties in question would run until the end of the 1987–88 school year. After the district court's order, the injunction is no longer in effect as it previously existed. Thus, the district court's order clearly modified the injunction. That the actual termination of those duties was made dependent upon certain events does not alter the fact that the form of the injunction was altered by the district court's order. The termination of the remedies, although conditional, could not be said to depend upon the fulfillment of only speculative possibilities. Since the Detroit Board was ordered by the district court to take the actions which would trigger the termination of the previous injunctions, the order created a reasonable certainty that these events would occur and the injunctions would terminate.

Finally, we find that the interlocutory order of the district court might have a "serious, perhaps irreparable, consequence" and that it can be "effectively challenged" only by allowing this appeal. *See Carson*, 450 U.S. at 84, 101 S.Ct. at 996. If the appellants are correct in their assertion that the district court's order prematurely terminated the injunctions, then their rights under those injunctions can be fully protected only by appealing the modification before the termination actually occurs. Otherwise, the appellants will lose the benefit of the injunctions during the time necessary to prosecute the appeal. Indeed, although the appeal in this case was docketed before the actual termination of the injunctions, the parties have complied with the district court's instructions and the injunctions have terminated.

Accordingly, we conclude that we have jurisdiction over this appeal.

## III.

The appellants' argument on appeal is primarily that the reasons stated by the district court for modifying the 1981 consent decree were insufficient as a matter of law. The appellants also argue, however, that the district court erred because no one had requested the termination of the community relations program and the uniform code of student conduct program and that they, therefore, did not have appropriate notice of the nature of the inquiry to be conducted. Because we agree with this latter argument, we remand this case for further proceedings; and in light of this procedural problem, we need not address whether the district court had the authority to act as it did had the proper procedures been followed.

## A.

A hearing is generally required before a district court may modify a consent decree. *See Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania*, 674 F.2d 976, 981 (3d Cir.), *cert. denied*, 459 U.S. 905, 103 S.Ct. 206, 74 L.Ed.2d 165 (1982); *Mayberry v. Maroney*, 529 F.2d 332, 335–36 (3d Cir. 1976). A hearing is, of course, without value if the parties lack notice of the issues to be resolved at the hearing. Although the district court conducted a hearing in this case, it was not preceded by a notice of the changes the district court had in mind. Thus, although the parties had an opportunity to address the district court as a general matter, they lacked an opportunity to address it on the specific subject of the district court's action.

The first order concerning the hearing in this case was entered on April 13, 1983. This order stated that "[i]t now appears appropriate that the court determine the future role of the *monitoring commission* and consider the manner of assuring *compliance* by the Detroit Board of Education with the orders relating to the educational components and particularly the stipulation of the parties regarding implementation of the educational components." This hearing

was subsequently delayed. On December 8, 1983, the district court issued an order rescheduling the hearing for January 25, 1984 "as the adjourned date of the hearing set in the order of April 13, 1983." The order also requested the parties to address the sufficiency of a compliance report issued by the Detroit Board. Neither of these orders stated that the hearing would be concerned with the termination of the community relations program or the uniform code of student conduct. Indeed, since the April 13, 1983 order stated that the hearing would address "the manner of assuring *compliance*" with the orders implementing the educational components, the order, if anything, seemed to contemplate the continued existence of those two programs. The possibility of termination was mentioned only in connection with the monitoring commission.

The transcript of the hearing itself reveals that the termination of the community relations program and the uniform code of student conduct were not contemplated. The court stated that the hearing was to address "one, the future role of the Monitoring Commission; and two, the manner of assuring compliance with the Order relating to the educational components." The court also noted that "we broadened that Order" so that consideration would also be given to the parties' "respective positions regarding the reports of the Detroit Board of Education and the responses." Not surprisingly, the arguments of counsel at this hearing focused on the sufficiency of the defendants compliance with the district court's orders and the sufficiency of their required reports. In a manner consistent with the orders calling for the hearing, the only program which was discussed in connection with termination was the monitoring commission.

The parties thus had no notice that the district court contemplated terminating its jurisdiction over the community relations program and the code of student conduct.[8]

Because the parties did not have an opportunity to address the district court on the propriety of such actions, that portion of the order providing for the termination of those programs must be vacated. The parties did have notice that the "future role" of the monitoring commission was in issue. Nonetheless, this portion of the district court's order must also be vacated. One of the two reasons given by the district court for terminating the monitoring commission was that it would have no function to perform in light of the termination of the community relations program and the court-ordered code of student conduct. Since one of the premises of the district court's reasoning no longer obtains, that portion of the order providing for the termination of the monitoring commission no longer rests upon adequate grounds. We reiterate that we have no occasion to pass on whether the reasons advanced by the district court for terminating these three programs would be sufficient had the termination been preceded by proper procedures. After appropriate notice and hearing, the District Court should make sufficiently detailed findings of fact and conclusions of law under Rule 52(a), Fed.R.Civ.P., to advise the parties of the factual basis for its decision and permit informed appellate review.

### B.

At oral argument, the parties questioned what type of order this court should enter in the event that we did not affirm the district court. Since we are vacating the order of the district court that terminated two of the three programs at issue, the legal effect of our judgment is to return this case automatically to the status quo ante. That is, since the order of the district court providing for termination of the previous injunctions and the consent decree is without legal effect, the earlier provisions are automatically resuscitated. The

---

8. On August 10, 1983, the Detroit Board moved to terminate the community relations program. This motion was not mentioned, however, in the order setting the January hearing. Accordingly, we cannot conclude that the parties had an opportunity to address the propriety of terminating the community relations program.

court is concerned, however, that an automatic and immediate return to the status quo ante might disrupt orderly school procedures. We therefore grant the district court a limited discretion to enter an order to provide for a smooth transition back to those programs. We wish to emphasize, however, that any such order shall only be for the purpose of effectuating a smooth and speedy transition to the status quo ante. We also suggest that the district court schedule the hearing required by this opinion at the earliest possible date.

## IV.

For the reasons stated above, the judgment of the district court is VACATED and the case is REMANDED for proceedings consistent with this opinion. We direct the clerk to issue the mandate upon the entry of judgment. Fed.R.App.Pro. 41(a). Costs are taxed to the appellees.