**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Argued February 28, 2013
Decided June 13, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 11-3463

| | |
|---|---|
| IN RE: | |
| OLDE PRAIRIE BLOCK OWNER, LLC, | Appeal from the United States District |
| *Debtor-Appellee*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
| | |
| APPEAL OF: | No. 11 CV 00160 |
| CENTERPOINT PROPERTIES TRUST, | |
| *Appellant*. | Ronald A. Guzman, *Judge*. |

**O R D E R**

Olde Prairie Block owns what appears to be a valuable piece of real estate located at 230 and 330 E. Cermak Road in Chicago, near McCormick Place. Olde Prairie had planned to develop condominiums on the site, but after the real estate bubble burst, the company decided to develop a hotel complex on the property. In February 2008, Olde Prairie signed a one-year promissory note for a $37,127,667.03 loan with CenterPoint Properties Trust, a real

estate investment company owned by the California Public Employees Retirement System. Olde Prairie secured the loan with a mortgage on the property. The interest rate on the note was exceptionally high (by the time this appeal was argued in late February 2013, CenterPoint estimated that it was owed between $80 and $81 million on the note). Unsurprisingly, as CenterPoint's attorney noted during oral argument, Olde Prairie was unable to meet its payment obligations.

Consequently, in February 2009 CenterPoint initiated a foreclosure action in state court after Olde Prairie defaulted. On May 18, 2010, shortly before the foreclosure sale was to begin, Olde Prairie filed for Chapter 11 bankruptcy, automatically staying the state court foreclosure action. On June 2, 2010, CenterPoint moved to dismiss the Chapter 11 case, or in the alternative, to lift the automatic stay to allow the state court foreclosure action to proceed. The bankruptcy court was required by 11 U.S.C. §§ 362(d)(3) and 362(e)(1) to rule on the Lift Stay motion by September 17, 2010. On that day the bankruptcy court held a hearing on the motion and denied CenterPoint's request to lift the stay. At the hearing, the bankruptcy court made "oral findings of fact and conclusions of law to be supplemented [in a later Order]." In its oral findings, the court noted that "the projection by [Olde Prairie's] expert of a large equity cushion [in the property at issue] cannot be accepted," and denied CenterPoint's motion to lift the automatic stay.

A few weeks later, the court entered an Order *nunc pro tunc* to September 17, 2010, which confirmed its oral Order conditionally denying CenterPoint's Lift Stay motion. The court appended the transcript from the September 17 hearing to that Order, and also noted that it would supplement the Order with a "subsequent written ruling (the 'Written Ruling')." Then, on October 29, 2010, pursuant to its earlier Order, the bankruptcy court issued its "Written Ruling" on CenterPoint's Lift Stay motion. In that ruling, the court changed its initial position on Olde Prairie's equity cushion in the property at issue. The court stated that "it is clear that [Olde Prairie] does have an equity cushion. Contrary to some comments in the original oral remarks from the bench, based on the evidence it is a large equity cushion. . . ." The bankruptcy court explained this change in considerable detail, having looked at all the evidence submitted by both parties in the action, and concluded that Olde Prairie had at least $33.15 million in equity in the property.[1]

---

[1]The bankruptcy court calculated this amount by determining that the property was worth $81,150,000. At the time that determination was made, Olde Prairie owed approximately $48,000,000 on the note, leaving it with an equity cushion of $33,150,000 in the property.

In November 2010, CenterPoint moved to amend the bankruptcy court's findings of fact in its Written Ruling and sought to have the court enforce what it considered to be the "original" Stay Order (the September 17 ruling in which the court found that Olde Prairie did not have a significant equity cushion in the property), arguing that the court's oral statement made during the hearing (and later appended to the *nunc pro tunc* Order) was a final and binding Order. In other words, CenterPoint wanted the bankruptcy court's first Order (which found that Olde Prairie did not have an equity cushion in the property) to be a final judgment within the meaning of FRCP 52 and FRBP 7052. With that in mind, CenterPoint argued that the subsequent Written Ruling, which found that Olde Prairie did have an equity cushion, violated Rule 52.

Meanwhile, Olde Prairie moved the bankruptcy court to allow it to enter into a Debtor-In-Possession ("DIP") credit agreement with an investment company. Olde Prairie sought up to an additional $4 million in order to pay real estate taxes and various other expenses. In exchange for the loan, Old Prairie offered a "superpriority priming lien" on the property to secure the line of credit.[2] CenterPoint contested Olde Prairie's motion, but the bankruptcy court approved the DIP loans and issued an Expense Order allowing Olde Prairie to borrow a little over $2 million from the company in exchange for a superpriority priming lien on the property.

In February 2011 the bankruptcy court denied CenterPoint's motion to amend its findings of fact and enforce the "original" Stay Order. CenterPoint appealed to the district court, which upheld the bankruptcy court's decision. The district court also dismissed CenterPoint's appeal of the Expense Order and DIP orders, ruling that it lacked subject matter jurisdiction over the orders. This appeal followed.

In early 2012, while this appeal was pending, CenterPoint moved the bankruptcy court to dismiss the Chapter 11 case and lift the stay on the state foreclosure action. The bankruptcy court did so on April 17, 2012, and CenterPoint subsequently received a judgment of foreclosure and sale of the property in state court on August 13, 2012. In a familiar response, however, just days before a scheduled foreclosure sale, Olde Prairie filed a second Chapter 11 case, which again stayed the sale. This second Chapter 11 case was dismissed with prejudice on January 18, 2013. In light of the fact that the bankruptcy case

---

[2]A "superpriority priming lien" places the right of a creditor to receive payment ahead of other creditors that would normally have superior claims to payments. Thus, by granting the investment company a superpriority priming lien on the property, Olde Prairie ensured that the company would be paid back ahead of CenterPoint.

underlying this appeal has been dismissed with prejudice, this appeal is moot and is therefore dismissed.

It is axiomatic that "those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). As we have previously held, a case "is moot when it no longer presents a live case or controversy." *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001). Despite CenterPoint's protestations to the contrary, there is no longer any case or controversy because the Chapter 11 case underlying CenterPoint's appeal has been dismissed with prejudice.

CenterPoint argues that this case is not moot because the bankruptcy court's Expense Order allowed Olde Prairie's primed DIP loan to go forward, thus increasing its potential exposure by approximately $3.25 million (with interest, the amount owed had grown to well over $3 million by the time this appeal was argued). It further argues that the bankruptcy court specifically retained jurisdiction over this matter in its April 17, 2012 Order wherein it lifted the stay and granted CenterPoint's motion to dismiss Olde Prairie's Chapter 11 case. But CenterPoint's concern that it might not recover the full amount of what it is owed because of the DIP loan does not create a "case or controversy" within the meaning of Article III. *See, e.g., Belda v. Marshall*, 416 F.3d 618, 621 (7th Cir. 2005) (holding that an appeal from a district court order was moot once the underlying bankruptcy case was dismissed). *Belda* is particularly instructive in that the parties there argued that we should invoke the "capable of repetition" exception to the mootness doctrine and resolve their question even though the bankruptcy case underlying the appeal had been dismissed (but not with prejudice). *See id.* at 620. We declined to do so, finding that there was no reasonable expectation that the parties would be subject to the same question again. *Id.* In this case, there is even less risk of repetition than in *Belda*, as Olde Prairie's Chapter 11 case has been dismissed *with prejudice*, making it even less likely that the parties would ever again face a question about the Expense Order at issue here.

Further, even if we were to find that the matter were not moot, CenterPoint simply could not clear all the hurdles standing in its way to obtain the relief it seeks. We decline to engage in an improbable series of legal acrobatics and impose a needless shuffle of simple facts on the courts and the parties. There should be no further costly delay with this matter. CenterPoint may have an additional $3.25 million in potential exposure when it attempts to recover the value of its note, but because the Chapter 11 case underlying this appeal has been dismissed, this appeal is moot and is therefore DISMISSED.