**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**


Argued February 28, 2013
Decided August 28, 2013


**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*


| | |
|---|---|
| No. 12-2834 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| COREY H., et al., | |
| *Plaintiffs-Appellees*, | |
| *v.* | No. 92 C 3409 |
| CHICAGO BOARD OF EDUCATION, | **Robert W. Gettleman**, *Judge*. |
| *Defendant-Appellant*. | |


**O R D E R**

**I**. Background

Because this litigation has been ongoing for over twenty years, we only briefly recount the underlying facts and procedural posture. In 1992, a group of disabled students who attended various Chicago Public Schools ("CPS", which we use to refer to

the Chicago Board of Education as well) filed a putative class action lawsuit against the Illinois State Board of Education ("ISBE"), CPS,  and other governmental entities. Among the numerous claims that the plaintiffs raised was the allegation that the ISBE was responsible for CPS's district-wide practice of assigning disabled students to schools and classrooms based solely on their disability classifications, in violation of the Individuals with Disabilities Education Act ("IDEA"). The IDEA required the various governmental entities to educate children in the least restrictive environment ("LRE") according to their needs. Of the more than 500,000 students then enrolled in CPS, at least 10% had been classified by CPS as having disabilities.

The case was initially assigned to Judge Leinenweber, who denied motions to dismiss and certified the class, which was defined as: "all children who are enrolled in [CPS] and who are or will be classified as having a disability by [CPS], and who are therefore subject to [CPS's] and ISBE's illegal practice and policy of failing to educate children with disabilities … ." The parties attempted to settle the case, and CPS negotiated a comprehensive settlement agreement that assumed the class definition above and was approved by the district court in February 1998. The CPS consent decree committed CPS to instituting a series of reforms and administering a program called the "Education Connection," which would provide resources to approximately one-third of its schools to bring them into compliance with the IDEA.

Settlement negotiations with the ISBE, however, fell through and the parties proceeded to a bench trial. The district court found in favor of the plaintiffs and held that the ISBE violated the IDEA. It also ordered the ISBE to submit a plan detailing how it would bring CPS into compliance with the law. In response to the district court's judgment, in June 1999 the ISBE entered into a consent decree with the plaintiffs in which it outlined the steps that it would take to correct CPS's noncompliance with the IDEA and to monitor CPS's future compliance.

The consent decrees mandated: (1) that the district court would oversee the consent decrees until January 2006; (2) that the district court would appoint a Monitor[1] to oversee the implementation of the decrees and compliance with its terms; (3) that the parties would establish district-wide targets and benchmarks by which CPS could show

---

[1] The original court-appointed Monitor was Judge Joseph Schneider, a judge on the Circuit Court of Cook County. After he retired in 2003, the court appointed Kathleen Yannias as Monitor.

it was complying with the decrees; and (4) that if CPS schools were unable to meet established targets, the schools could request exemptions from those targets.

Although the parties entered into the consent decrees in good faith, the parties were unable to agree upon a number of items related to the decrees' implementation. Consequently, the Monitor formulated the district-wide targets and determined that, beginning on June 1, 2005, the maximum percentage of students with disabilities in any school in the CPS system could be no greater than 20% of the school's total student population. The Monitor also stated that the ISBE could grant waivers to schools from the 20% cap.

CPS objected to the district court, arguing that the 20% enrollment cap was erroneously based on the Monitor's inconsistent use of nationwide statistics and definitions of terms used to determine IDEA compliance. But in an order issued on February 17, 2000, the district court rejected CPS's arguments and concluded that the Monitor did not abuse her discretion by establishing the 20% cap. For five years, CPS sought no waivers from the Monitor's targets. But on June 1, 2005—the deadline by which all CPS schools were required to comply with the 20% enrollment cap—CPS sent a letter to the Monitor and the ISBE seeking waivers from the 20% cap for 96 schools.

As a result of the request, and in consideration of various other difficulties CPS had in meeting district-wide targets, when the Monitor reported to the district court on the progress of the consent decree, she recommended extending the term the district court would oversee the consent decrees to the end of the 2009–2010 school year. The district court adopted the Monitor's decision (over objections by CPS) and both extended its jurisdiction over the decrees until September 1, 2010, and confirmed that the maximum percentage of disabled students allowed per school remained at 20%.

CPS appealed the district court's order to this court, asserting that the court abused its discretion by reaffirming the 20% enrollment cap. In *Corey H. v. Board of Educ. of Chi.*, 534 F.3d 683 (7th Cir. 2008), we dismissed CPS's appeal, holding that the challenge was not ripe because it was too early for us to entertain any challenge to the 20% enrollment cap, as CPS could still seek and obtain waivers for the schools that could not comply with the cap. *Id.* at 689.

In 2010, the district court determined that the interests of all parties and the public required that both consent decrees should terminate. The parties agreed, and the

court ordered that the consent decree for the ISBE would terminate on August 1, 2011, and the consent decree for CPS on September 1, 2012. With the consent decrees terminated, the only remaining action is for the Monitor to file the final report detailing her findings of the agencies' compliance with the decrees. Then, just a few months before the consent decree for CPS was set to terminate, CPS filed a motion with the district court to decertify the original "Corey H." class and vacate the consent decree it had agreed to in 1998 and also in 2010. The district court denied the motion and CPS appealed to this court.

On appeal, CPS contends that the district court erred by denying its motion on the ground that our decision in *Jamie S. v. Milwaukee Pub. Schs.*, 688 F.3d 481 (7th Cir. 2012), mandates that we decertify the class and vacate the consent decree. We need not consider CPS's arguments, however, because this case is moot. We have no jurisdiction to entertain CPS's motion, and this appeal is therefore dismissed.

## II. Discussion

A federal court's jurisdiction is limited to cases that present a live controversy. *See* U.S. CONST. art. III, §2. The consent decree at issue here expired on September 1, 2012; thus, there is no longer a consent decree for us to vacate.[2] Since there is no decree, there is no controversy, and the case is moot. *See, e.g.*, *United States v. Brennan*, 650 F.3d 65, 91 (2d Cir. 2011) (noting that any issues regarding settlement approval were moot because the settlement agreement had already expired under its own terms); *Hallett v. Morgan*, 296 F.3d 732, 749 (9th Cir. 2002) (holding that a motion to terminate a consent decree was moot because the challenged provisions of the decree had expired); *Taylor v. United States*, 181 F.3d 1017, 1022 (9th Cir. 1999) (en banc) (holding that a motion to terminate a consent decree was "moot" because there was "no … consent decree left to be terminated").

---

[2] Consent decrees are construed strictly to preserve the bargained-for positions of the parties, and courts have an affirmative duty to protect the integrity of their decrees and ensure that the terms are effectuated. *See Cleveland Firefighters for Fair Hiring Practices v. City of Cleveland*, 669 F.3d 737, 743 (6th Cir. 2012) (Keith, J., dissenting) (citing *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)). For that reason, we strictly enforce the termination of the decree on September 1, 2012.

Even if this case were not moot, we would not grant the relief CPS seeks. As the district court noted, over the past twenty-one years, during which the parties invested thousands of hours and spent tens of millions of dollars in an effort to reform the CPS special education system for the benefit of disabled children, no one—not the plaintiffs, ISBE, or CPS—has ever complained about the class certification definition. Why, at this late date, the CPS would try to obliterate two decades' worth of effort is mystifying to us. The CPS just reaffirmed its commitment to the decree in 2010, and nothing has occurred since then to suggest that complying with the terms of the decree had changed in any meaningful way. Even if circumstances had changed, however, CPS is no longer under any burden, substantial or otherwise, to comply with any obligations it assumed under the expired decree. As we noted above, the only remaining obligation is for the Monitor, who will file her report at some point presumably in the near future.[3] Thus, even if this case were not moot, no justification exists for vacating the decree.

### III. Conclusion

For the foregoing reason, this appeal is moot and is therefore **DISMISSED**.

---

[3] At oral argument, one of the attorneys for CPS suggested that the school system was concerned that information contained in the Monitor's pending report might provide grounds for future lawsuits. That may well be true, but as we have held in the past, a vague or nebulous fear is insufficient to create a case or controversy. *See In re Olde Prairie Block Owner, LLC*, 515 Fed. Appx. 590 (7th Cir. 2013).